THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROCKIN ARTWORK, LLC, <br><br> Plaintiff, <br><br> v. <br><br> BRAVADO INTERNATIONAL GROUP MERCHANDISING SERVICES, INC., a California corporation; AUTHENTIC HENDRIX, LLC, a Washington limited liability company; and EXPERIENCE HENDRIX, a Washington limited liability company, <br><br> Defendants. | CASE NO. C15-1492-JCC <br><br> ORDER |

This matter comes before the Court on the motion for summary judgment (Dkt. No. 73) and the motion for sanctions (Dkt. No. 76) by Defendant Bravado International Group Merchandising Services, Inc.[1] Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and, for the reasons discussed herein, hereby GRANTS the motion for summary judgment (Dkt. No. 73) and the motion for sanctions (Dkt. No. 76).

---

[1] Defendants Authentic Hendrix, LLC and Experience Hendrix, LLC join Bravado's motion for summary judgment with respect to the claims upon which their liability is based on an agent-principal relationship with Bravado. (*See* Dkt. Nos. 90, 118.)

## I. BACKGROUND

This case is a dispute over the licensing rights to Jimi Hendrix memorabilia. In its complaint, Plaintiff Rockin Artwork, LLC alleges that it has "various rights to Jimi Hendrix images and likenesses, various items of artwork created by Jimi Hendrix, and Jimi's brother Leon Hendrix's exclusive endorsement of Jimi Hendrix products." (Dkt. No. 1 at 2, 3.) Rockin "licenses [these rights] to other individuals and/or entities who then create Jimi Hendrix memorabilia for sale to the consumer market." (*Id*. at 4.)

Defendants Authentic Hendrix, LLC and Experience Hendrix, LLC ("the Hendrix Defendants") also own merchandising rights associated with Jimi Hendrix. (Dkt. No. 73 at 2.) In February 2015, the Hendrix Defendants entered into an exclusive license with Defendant Bravado International Group Merchandising Services, Inc. to manage those merchandising rights. (*Id.*) On March 17, 2015, Bravado sent a letter to three licensees of the Hendrix Defendants—Hybrid Apparel, C-Life Group, and Liquid Blue—stating:

> As you may be aware, we now hold the exclusive worldwide merchandising rights for the late recording artist p/k/a Jimi Hendrix ("Artist"). It's come to our attention that your agreement you entered into with his estate had expired on December 31, 2014.
> Therefore, this shall hereby serve as formal notice to you that the Term of the above-referenced agreement (the "Agreement") has hereby expired.
> As a result, all rights to Artist merchandise granted to your company under the Agreement shall hereby immediately be deemed terminated and shall revert back to Bravado International Group Merchandising Services, Inc. ("Bravado") on behalf of Artist's estate.

(Dkt. No. 29-11 at 5, 7, 9.) These letters are hereinafter referred to as the Termination Letters.

On September 17, 2015, Rockin brought suit against Bravado and the Hendrix Defendants, alleging tortious interference with contract and business expectancy, fraud, negligent misrepresentation, trade libel, consumer protection violations, and false designation of origin under the Lanham Act, 15 U.S.C. § 1051 *et seq*. (Dkt. No. 1 at 13-18.) Rockin bases these claims on its allegation that Bravado "contacted various prospective licensees and actual licensees of [Rockin] and have incorrectly informed them, either directly or by implication, that

[Rockin] is not authorized to enter into such agreements and/or that only Defendants are authorized to enter into such agreements or engage in the business of selling Jimi Hendrix memorabilia." (*Id.* at 5.) According to Rockin, the Hendrix Defendants also participated in these false communications. (*Id.*)

On August 25, Bravado moved to compel Rockin to produce discovery, arguing that Rockin refused to produce discoverable documents. (Dkt. No. 28 at 2, 6.) Shortly thereafter, the Hendrix Defendants brought a similar motion. (Dkt. No. 33.) The Court granted both motions, reasoning that Rockin had waived its objections by failing to timely raise them and was required to produce the requested discovery.[2] (*See* Dkt. Nos. 42, 58, 59.) The Court commented that "Defendants' requests were straightforward and clear, and they go to the heart of Rockin's claims. Rockin's continued insistence to obfuscate the basis for its claims cannot be condoned." (Dkt. No. 58 at 7.)

On October 20, Rockin sought an extension of time to complete discovery, arguing that Defendants' unavailability and duplicative discovery requests caused delays. (Dkt. No. 50 at 1-2.) Rockin also moved to compel discovery from the Hendrix Defendants. (*See* Dkt. No. 52 at 5-7.) A week later—directly after the Court had resolved both of Defendants' motions to compel and ordered Rockin to produce discovery, (*see* Dkt. No. 58, 59)—Rockin moved to amend its complaint to strike its Lanham Act claim. (Dkt. No. 62 at 1.) Rockin said it "believe[d] that it will be difficult to prevail on this claim" and noted that, without the sole federal claim, this Court could lose jurisdiction. (*Id.* at 3.) Rockin also sought to stay all proceedings until the amendment issue was resolved. (Dkt. No. 60 at 1.)

The Court granted the stay in part, reasoning that, if the Court would soon lose

---

[2] The Court also awarded fees to Defendants pursuant to Rule 37. (Dkt. No. 42 at 8; Dkt. No. 59 at 7.) Defendants were later forced to move to compel payment of those fees because Rockin refused to tender payment. (Dkt. Nos. 65, 67.) The Court also granted those motions. (Dkt. No. 89 at 1-2.)

jurisdiction, it would not be in the interest of judicial economy to rule on pending motions. (Dkt. No. 64 at 1.) The Court otherwise denied the stay, reasoning that the Lanham Act claim was "one of many in this case, and the discovery sought thus far is relevant to Rockin's claims as a whole. Thus, to proceed ahead would not be futile and would prevent even further delay in this case." (*Id.* at 2.)

On November 17, Bravado filed a motion for summary judgment and a motion for sanctions, both seeking dismissal of all claims. (Dkt. Nos. 73, 76.) Bravado argued that Rockin had still not complied with the discovery orders and had produced "no admissible evidence on crucial elements of each of its claims." (Dkt. No. 73 at 1-2; *see also* Dkt. No. 76 at 1-2.)

On December 7, the Court denied Rockin's motion to strike its Lanham Act claim, concluding that the request was "untimely and constitutes a clear effort to engage in impermissible forum shopping." (Dkt. No. 89 at 1.) The Court lifted the stay and renoted the four pending motions. (*Id.* at 2.)

On January 5, 2017, the Court denied Rockin's motion to compel, reasoning that its discovery requests would not produce relevant and proportional discovery. (Dkt. No. 120 at 2-3.) The Court also denied Rockin's motion to extend the discovery deadline, concluding that any delays were attributable to Rockin, not to Defendants. (*Id.* at 3.) The Court stated: "Quite frankly, the Court suspects that this lawsuit is a fishing expedition and sees Rockin's requests as evidence of that intent." (*Id.* at 4.)

The Court now considers Bravado's motion for summary judgment (Dkt. No. 73) and motion for sanctions (Dkt. No. 76).

## II.   DISCUSSION

### A.   Summary Judgment Standard

The Court shall grant summary judgment if the moving party shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In making such a determination, the Court must view the

facts and justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party must present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248-49. Ultimately, summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

### B. Motion for Summary Judgment

Bravado seeks dismissal of all claims, arguing that Rockin has failed to produce any supporting evidence. (*See generally* Dkt. Nos. 73, 76.) Bravado argues that, due to this lack of evidence, summary judgment in its favor is appropriate. (Dkt. No. 73 at 1-2.) Bravado further asserts that the failure to comply with discovery orders warrants dismissal of Rockin's claims as a sanction. (Dkt. No. 76 at 1-2.)

#### 1. Rockin's Procedural Arguments

Rockin raises multiple arguments as to the procedural propriety of Bravado's motions. One such argument is that Bravado's act of filing the motions violated the Court's stay order. (Dkt. No. 87 at 2.) Not so. The Court stated that it would not rule on pending motions, but that the case would otherwise continue. (Dkt. No. 64 at 1-2.) Nowhere did the Court prohibit Defendants from filing motions in an effort to resolve this case.

Rockin further asserts that Bravado's summary judgment motion should be denied under Rule 56(d), which states: "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to its opposition, the Court may . . . defer considering the motion or deny it." (Dkt. No. 87 at 4.) Rockin argues that, because the Court had not resolved

its motion to compel before its summary judgment response was due, Rockin was "hamstrung with respect to obtaining necessary information." (*Id.* at 4-5; Dkt. No. 98 at 10.) However, the Court has since denied Rockin's motion to compel and motion to extend discovery, meaning Rockin was not entitled to that evidence. (*See* Dkt. No. 120 at 2-3.)

Rockin further challenges the Court's decision to deny its motion to strike the Lanham Act claim. (*See* Dkt. No. 98 at 5-8.) This is an improper method of asking the Court to reconsider its order. *See* W.D. Wash. Local Civ. R. 7(h)(2) ("A motion for reconsideration shall be plainly labeled as such."). Moreover, it is meritless.

Rockin first argues that a motion to amend pleading cannot be denied as untimely. (Dkt. No. 98 at 5.) The Court acknowledges that a party may bring a motion to amend "at any time prior to trial." Fed. R. Civ. P. 15(a)(2). But the Court's comment about timeliness was not intended as a standalone basis for denial. Rather, the Court found that Rockin's dilatory practices negated its argument that amendment served the interests of justice. (*See* Dkt. No. 89 at 1.)

Second, Rockin argues that denying its motion to amend did not serve the interests of justice, because Defendants opposed the motion and then immediately filed motions to dismiss that claim. (Dkt. No. 98 at 6.) This was within Defendants' rights. Their behavior has no bearing on Rockin's conduct that led the Court to deny its motion. (*See* Dkt. No. 89 at 1.)

Third, Rockin asserts that its actions did not constitute forum shopping because it did not seek a different venue or substantive law. (Dkt. No. 98 at 7-8.) While those are examples of common motives for forum shopping, the practice is not so limited. Rather, forum shopping is "choosing the most favorable . . . court in which a claim might be heard." BLACK'S LAW DICTIONARY (10th ed. 2014). Here, Rockin received multiple unfavorable rulings from this Court—the forum that Rockin itself chose in bringing suit—and then sought a transfer to state court, seemingly in the hopes that it would find a new judge who had not yet seen all of its tricks. It is precisely this type of behavior that the policy against forum shopping is designed to address.

Finally, Rockin argues that it has a legal right to move to amend its complaint under

ORDER
PAGE - 6

Federal Rules of Civil Procedure 15 and 41. (Dkt. No. 98 at 8.) This is true. But while Rockin has the right to ask, it does not have the right to a favorable answer. *See* Fed. R. Civ. P. 15(a)(2) (once 21 days have passed after service, "a party may amend its pleading only with the opposing party's written consent or the court's leave"); Fed. R. Civ. P. 41(a)(2) (if the opposing party has filed a responsive pleading and does not stipulate to dismissal, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper").

Thus, for all the reasons articulated here and in previous orders, Bravado's motions are procedurally proper and shall be decided on the basis of the record currently before the Court.

### 2. False Designation of Origin

Rockin's complaint alleges that "Defendants' conduct complained of herein constitutes 'false designation of origin' . . . in violation of the Lanham Act." (Dkt. No. 1 at 19.) Bravado argues that this claim should be dismissed with prejudice because its conduct was not prohibited by the Lanham Act. (*See* Dkt. No. 73 at 12-13.)

Rockin raises no substantive argument in response. (*See* Dkt. No. 98 at 18.) Instead, Rockin argues that Bravado's motion should be denied as to this cause of action, because Rockin already moved to strike the claim, rendering Bravado's request moot. (*Id.*) But, as discussed above, the Court rejected Rockin's request to strike its claim and retained jurisdiction to determine this matter on the merits.

The Lanham Act establishes liability for "[a]ny person who, on or in connection with any goods or services [uses] any false designation of origin [that] is likely to cause confusion, or to cause mistake." 15 U.S.C. § 1125(a)(1). The "central concern in a case under the Lanham Act section creating civil liability for false designations of origin is whether the public is likely to be confused as to the manufacturer, attributes, or origin of the product." 87 C.J.S. *Trademarks, Etc.* § 274 (2016) (citing *Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179 (11th Cir. 2002)).

Rockin fails to articulate how this provision is applicable to its claim that Defendants misled licensees about who owned particular merchandising rights. Nor can the Court conceive

of an application to this case. Bravado's motion for summary judgment is GRANTED as to Rockin's Lanham Act claim.

### 3. Tortious Interference with Contract and Business Expectancy

Rockin alleges that, in misleading companies as to Rockin's licensing rights, Defendants interfered with Rockin's existing and prospective contracts and business expectancies. (Dkt. No. 1 at 13.) Bravado argues that this claim should be dismissed because "Bravado created, rather than interfered, with Rockin's business opportunities." (Dkt. No. 73 at 15.)

In Washington, a claim for tortious interference with a contractual relationship or business expectancy has five elements that must be proved:

> (1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage.

*Leingang v. Pierce County Medical Bureau, Inc.*, 930 P.2d 288, 300 (Wash. 1997).

Here, Rockin alleges that Defendants interfered with its relationships with three companies: Hybrid Apparel, Trevco, and Jimi Electronics. (Dkt. No. 98 at 14.)

Trevco and Jimi Electronics did not receive a Termination Letter from Bravado. (Dkt. No. 73 at 15.) Bravado argues that Rockin has otherwise "produced no admissible evidence suggesting that Bravado had any other contact with these entities at all, much less contact that somehow interfered with some contract or expectancy." (*Id.*) As to Hybrid, Bravado produces evidence that its Termination Letter actually caused Hybrid to seek—not end—a business relationship with Rockin. (*See* Dkt. No. 75.) According to Hybrid's Executive Vice President of Licensing, Derrick Baca, Hybrid had no relationship with Rockin prior to receiving the Termination Letter, but the letter made Baca "interested in exploring other avenues." (Dkt. No. 75 at 2.) Baca's declaration explicitly states:

> Hybrid did not begin negotiating with Rockin Artwork regarding a potential contract until *after* Bravado informed Hybrid that its agreement with Experience Hendrix would not be renewed. We only became interested in what Rockin

Artwork might have to offer because of Bravado's letter informing us that our license through Authentic would not renew.

(*Id.*)

In response, Rockin produces two declarations: one from its counsel, Thomas Osinski, and one from its co-owner, Andrew Pitsicalis, both of which state that Rockin had a business relationship with Hybrid before receipt of the Termination Letter.[3] (Dkt. No. 98 at 14; Dkt. No. 102 at 1-2; Dkt. No. 103 at 6.) However, Rockin submits no other evidence of this relationship or the alleged "agreement [that] was finalized, all but the final signatures, as of February 2014." (Dkt. No. 103 at 6.) The declarations likewise state, without supporting evidence, that Defendants made misleading communications to Trevco and Jimi Electronics about Rockin's rights, causing those companies to back out of negotiated deals. (Dkt. No. 103 at 6-7; Dkt. No. 102 at 3-4.) Rockin did not produce any of this evidence in response to Defendants' discovery requests or the Court's order compelling them to do so. (*See* Dkt. No. 58 at 3.)

Accordingly, Bravado moves to strike this evidence. (Dkt. No. 112 at 3-4.) Under Rule 37(c)(1), "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Rockin's failure to comply with a discovery order was not substantially justified. Nor can the failure to produce the discovery be considered harmless: Rockin's self-serving declaration attempts to use the withheld evidence to create a dispute of material fact and defeat summary judgment. Bravado's motion to strike is thus GRANTED. Any allegations in the Osinski and Pitsicalis declarations about Defendants' contact with licensees are inadmissible if they pertain to or rely upon evidence that was withheld in violation of the Court's discovery orders.

---

[3] Rockin also points generally to "the Court Record." (Dkt. No. 98 at 14.) Such a citation is insufficient. *See* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record.").

ORDER
PAGE - 9

1     Without these declarations, Rockin has produced no evidence that Bravado interfered
2 with any contractual relationship or business expectancy. Bravado's motion for summary
3 judgment is thus GRANTED as to this claim.

        4. <u>Fraud/Negligent Misrepresentation</u>

5     Rockin's complaint alleges that Defendants committed fraud and negligent
6 misrepresentation by falsely informing prospective licensees that Rockin had no rights to deal in
7 Hendrix memorabilia. (Dkt. No. 1 at 14.)  To prevail on a claim of fraud, a plaintiff must show
8 "(1) representation of an existing fact; (2) materiality; (3) falsity; (4) the speaker's knowledge of
9 its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's
10 ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's
11 right to rely upon it; and (9) damages suffered by the plaintiff." *Adams v. King County*, 192 P.3d
12 891, 902 (Wash. 2008).

13     Bravado argues that this claim should be dismissed because Rockin has no evidence "that
14 Bravado ever made any statement to Rockin upon which Rockin was entitled to rely, or that
15 Bravado owed Rockin any special duty." (Dkt. No. 73 at 16.) In response, Rockin states only that
16 these claims are "asserted as alternatives to the trade liable [sic] and consumer protection act
17 claims as Defendant's fraudulent/misrepresentative communications were directed at third
18 parties and not at" Rockin. (Dkt. No. 98 at 15.) Thus, as Rockin admits, there is no allegation
19 that Bravado made any false statement to Rockin or that Rockin relied upon any such statement.
20 Rockin has not pleaded a proper fraud claim, much less shown that the claim should survive
21 summary judgment. Bravado's motion is GRANTED as to Rockin's fraud/negligent
22 misrepresentation claim.

        5. <u>Trade Libel</u>

24     Rockin's complaint asserts that Defendants' conduct constitutes trade libel under
25 Washington law "in that it constituted a knowing false or misleading statement about Defendants
26 published to a third party or parties which is the proximate cause of [Rockin's] damages." (Dkt.

No. 1 at 17.)  Rockin clarified on summary judgment that its trade libel claim is essentially a "defamation *per se*" argument.[4] (Dkt. No. 98 at 15.) Bravado argues that this claim must fail because Rockin has no evidence to support a trade libel or defamation claim. (Dkt. No. 73 at 17; Dkt. No. 112 at 10-11.)

To establish a claim for trade libel, "a plaintiff must allege that the defendant published a knowingly false statement harmful to the interests of another and intended such publication to harm the plaintiff's pecuniary interests." *Auvil v. CBS 60 Minutes,* 67 F.3d 816, 820 (9th Cir.1995). A communication constitutes defamation *per se* if it "(1) exposes a living person to hatred, contempt, ridicule or obloquy, or to deprive him of the benefit of public confidence or social intercourse, or (2) injures him in his business, trade, profession or office." *Life Designs Ranch, Inc. v. Sommer*, 364 P.3d 129, 134 (Wash. Ct. App. 2015).

As support for its claims, Rockin again cites its Osinski and Pitsicalis declarations, which allege that Defendants made false statements to licensees about Rockin's merchandising rights. (Dkt. No. 98 at 16; Dkt. No. 102 at 3-4; Dkt. No. 103 at 4-7.) These allegations pertain to withheld discovery and, as discussed above, are stricken from the record. This leaves the Termination Letters as the only admissible evidence. These letters communicated to the Hendrix Defendants' licensees that Bravado now exclusively held their merchandising rights and would not be renewing the licensing agreements. (*See* Dkt. No. 29-11 at 5, 7, 9.)  The letters did not communicate a false or harmful statement about Rockin. And, even if they had, there is no evidence that Rockin suffered any harm as a result. In fact, the admissible evidence shows that Rockin actually benefitted from Defendants' termination of those agreements. (*See* Dkt. No. 75) (Baca declaration that Termination Letter caused him to reach out to Rockin); (*see also* Dkt. No.

---

[4] It is unclear whether trade libel is an actionable claim in Washington, and Rockin has provided no legal authority to support its assertion that these two causes of action are equivalent. The Court does not further explore this issue because Rockin has not provided admissible evidence to support either claim.

74-15) (merchandising agreement entered into between Rockin and C-Life Group after receipt of Termination Letter).

Bravado's motion for summary judgment is GRANTED as to Rockin's trade libel/defamation claim.

### 6. Consumer Protection Act

Finally, Rockin's complaint alleges that Defendants' conduct constitutes a consumer protection violation. (Dkt. No. 1 at 17-18.) To prevail under the Washington Consumer Protection Act (WCPA), a plaintiff must establish each of the following elements: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; [and] (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533–35 (Wash. 1986).

Assuming, without deciding, that the conduct alleged could constitute a WCPA violation, Rockin again relies on the stricken evidence to support its claim. (*See* Dkt. No. 98 at 17-18.) For the reasons articulated above, Rockin fails to submit admissible evidence to support this cause of action. Bravado's summary judgment motion is GRANTED as to the WCPA claim.

### C. Motion for Sanctions

Bravado also asks the Court to dismiss the claims against it and to grant an award of reasonable expenses as a sanction for Rockin's contempt in disobeying the Court's discovery orders. (Dkt. No. 76 at 1.) Because the Court grants summary judgment on all claims against Bravado, the dismissal request is moot.

However, the Court deems it appropriate to award expenses and fees pursuant to Rule 37. Under this provision, if a party does not comply with a discovery order, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). As noted above, Rockin's failure to comply was not substantially justified. Rule 37 thus mandates an

award of fees.

It is unclear whether the bad behavior here was on the part of counsel or the client. Thus, the Court ORDERS both Rockin and its counsel to pay Bravado's reasonable expenses, including attorney fees, in bringing the motion for summary judgment and motion for sanctions. Bravado shall submit an accounting of its expenses within 14 days of this order.

## III.     CONCLUSION

The Court GRANTS Bravado's motion for summary judgment (Dkt. No. 73) and motion for sanctions (Dkt. No. 76). Rockin's claims against Bravado are DISMISSED with prejudice. These claims are also DISMISSED with prejudice as to the Hendrix Defendants to the extent that their liability is based on an agent-principal relationship.

DATED this 12th day of January 2017.

John C. Coughenour
UNITED STATES DISTRICT JUDGE